IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

OCT 2 8 2008

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

ELIZABETH CRING,

    Plaintiff,

v.

Civil Action No. 3:08cv314

BFS RETAIL & COMMERCIAL
OPERATIONS, LLC, d/b/a
FIRESTONE COMPLETE AUTO CARE,
and/or FIRESTONE TIRE
& AUTO CENTER,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on Defendant BFS Retail & Commercial Operations LLC's Motion for Summary Judgment (Docket No. 13). For the reasons set forth below, the motion is DENIED.

## BACKGROUND

On or about August 24, 2005, the Plaintiff, Elizabeth Cring ("Cring"), made a delivery of auto parts to a Firestone store operated by the Defendant BFS Retail & Commercial Operations, LLC ("BFRC"). (Am. Compl. ¶ 5.) Cring allegedly tripped and fell over a pothole located in the parking lot of BFRC's store. (Id. ¶ 8.) As a result of this fall, Cring sustained personal injuries. (Id. ¶ 9.)

On August 10, 2007, Cring filed an action in the Circuit Court for the City of Richmond for damages sustained as a result of her injuries. (Notice of Removal ¶ 1.) BFRC received notice of Cring's state court complaint on April 25, 2008 and filed a

responsive pleading on May 15, 2008. (Id.) On May 23, 2008, BFRC filed a Notice of Removal based on diversity jurisdiction under 28 U.S.C. § 1332. (Id. ¶ 7.)

On July 7, 2008, Cring filed an amended complaint in which she alleged that BFRC was negligent in the management and maintenance of its premises because it allowed hazardous conditions to exist on the property. (Am. Compl. ¶ 6.) Cring further alleged that BFRC, in the exercise of reasonable care, had or should have had, knowledge of hazardous conditions on the premises, specifically, the pothole over which Cring tripped. (Id. ¶¶ 7-9.) As a proximate result of BFRC's negligence, Cring maintains that she sustained personal injuries for which she is owed damages. (Id. ¶¶ 9-10.)

BFRC has now moved for summary judgment pursuant to Fed. R. Civ. P. 56, asserting that summary judgment is proper because Cring was contributorily negligent as a matter of law. BFRC contends that Cring was contributorily negligent because the pothole was an open and obvious hazard that she should have, with the exercise of ordinary care, seen and avoided. (Def.'s Mem. In Support of Summ. J. 7.)

### STATEMENT OF FACTS

BFRC owns and operates a Firestone retail store located at 4401 Williamsburg Road in Richmond, Virginia ("BFRC store"). (Davis Dep. 4:24-5:4); (Def.'s Mem. in Supp. of Summ. J. 2.) Cring

2

is an employee at a Carquest Auto Parts store ("Carquest store") at 4408 Williamsburg Road, Richmond, Virginia which is located directly across the street from the BFRC store. (Def.'s Mem. In Support of Summ. J. 2.)

On August 24, 2005, Cring was asked by the Carquest store manager, Billy Sanderson, to make a delivery of parts to the BFRC store. (Cring Dep. 18:2-9.) The boxes of parts that Cring delivered were described as small, weighing less than two pounds. (Id. 18:24-19:2.) Given the small size of the parts and the close proximity to the BFRC store, Cring made the delivery on foot. (Id. 18:10-23.)

Cring left the Carquest store and walked directly across Williamsburg Road towards the BFRC store to make the delivery. (Id. 22:6-16.) After crossing Williamsburg Road, Cring crossed a grass-covered strip that separated the parking lot of the BFRC store from the street. (Id.) According to Cring, she stepped off of this grass-covered strip into the parking lot and almost immediately landed in a pothole. (Id. 22:10-21.) Landing in the pothole caused Cring to lose her balance and fall onto her hands and knees. (Id.)

After the incident, Cring stood up and delivered the parts to the BFRC store. (Id. 22:19-23:1.) Cring told employees at the BFRC store and fellow employees at Carquest that she had fallen in the parking lot. (Id. 22:25-23:3.) Cring did not return to

inspect the pothole until a month or two after the incident.  (<u>Id.</u> 28:9-16.)   During that visit, Cring, accompanied by a Liberty Mutual Insurance Corporation adjuster, took photographs of the pothole.  (<u>Id.</u>; <u>see also</u>,(Resp. to Def. Mot. for Summ. J., Ex.'s 4-6 (photographs of the pothole).)

Cring states that the pothole in issue measured approximately one foot by one and a half feet and was about three to four inches deep.  (Answer to BFS Retail & Commercial Operations LLC's First Set of Interrogs., Answer. 3.)  Photographs of the pothole confirm this description.  <u>See</u> (Resp. to Def. Mot. for Summ. J., Ex.'s 4-6.)

According to Cring, there were cars on either side of the pothole.   (Cring Dep.  42:12-14.)    There  was  a  space  of approximately one to one and a half feet between the cars through which Cring could walk.  (<u>Id.</u> 42:22-24.)  Cring also claims that one of the of the cars was over the line demarcating the parking space and thus shaded the pothole.  (<u>Id.</u> 42:5-11.)  Cring does not offer any evidence of distractions, such as a car horn, that would have drawn her attention away from where she was walking.

Steve Davis, manager of the BFRC store, stated that he or a designated employee checked the parking lot everyday for potential hazards.  (Davis Dep. 16:3-13.)  In the event that Davis or any other employees discovered a problem, it was reported and taken care of at that time.  (<u>Id.</u>)  Neither Davis nor any employee of the

4

BFRC Williamsburg Road claims to have known of the existence of the
pothole before the accident in issue. The photographs make it
appear as if the pothose was not recently formed, or at least a
jury could so find.

DISCUSSION

I.   Standard of Review

      The standards applicable to summary judgment motions are well-
established. Summary judgment is proper only when there are no
genuine issues as to any material facts, and the moving party is
entitled to judgment as a matter of law. Fed. R. Civ. P. 56;
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

      The "mere existence of some alleged factual dispute between
the parties will not defeat an otherwise properly supported motion
for summary judgment; the requirement is that there be no genuine
issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 247-48 (1986). It is the function of the district court not
to weigh the evidence, but to determine whether there is a genuine
issue for trial, and "there is no issue for trial unless there is
sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party." Id. at 249 (citations omitted).
Accordingly, summary judgment may be appropriate if the evidence is
"merely colorable" or "not significantly probative." Id. at 249-50
(citations omitted). The non-moving party "need only present
evidence from which a jury might return a verdict in his favor. If

5

he does so, there is a genuine issue of fact that requires a trial." Id. at 257.

Furthermore, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor." Id. at 255. Summary judgment is appropriate only if, upon consideration of the record as a whole, a reasonable trier of fact could not find for the non-movant. Allstate Financial Corp. v. Financorp, Inc., 934 F.2d 55, 58 (4th Cir. 1991). But, where a faithful examination of the record establishes the absence of a genuine issue of material fact, it is "the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex Corp., 477 U.S. at 323); see also Guinness PLC v. Ward, 955 F.2d 875, 883 (4th Cir. 1992). With these principles in mind, the motion for summary judgment filed by BFRC will be considered in a light favorable to Cring.

## II.  Contributory Negligence Under Virginia Law.

### A.  Contributory Negligence Is Generally an Issue of Fact for the Jury

Contributory negligence is "conduct which the man of ordinary prudence, under like circumstances, should reasonably anticipate would result in his own injury." 13B Michie's Jurisprudence, Negligence, § 24 (citing Patton v. Grafton, 116 Va. 311, 180 S.E.

6

267 (1914)).  Contributory negligence as a defense requires that the plaintiff's negligence be  a contributing, more than trivial cause of the accident.  See Simpson v. Lambert Bros. Division-Vulcan Materials Co., 362 F.2d 731, 734 (4th Cir. 1966) (applying Virginia law) (citations omitted).

Generally, under Virginia law, "contributory negligence is a factual issue for resolution by a jury." Ravenwood Towers, Inc. v. Woodyard, 244 Va. 51, 57, 419 S.E.2d 627, 631 (1992).  Only when reasonable minds could not differ, does the issue of contributory negligence become a matter of law to be resolved by the court.  See id.  The question of "[w]hether a defect or condition [was] open and obvious may be...a jury issue." Id. at 59, 419 S.E.2d at 632 (quotation omitted).

**B.  Contributory Negligence as a Matter of Law in "Slip-and-Fall" Actions**

BFRC asserts that summary judgment is proper because Cring was contributorily negligent as a matter of law.  In "slip-and-fall" cases, Virginia courts are permitted to conclude that there is contributory negligence as a matter of law when the hazard or condition in issue "was open and obvious and, by the exercise of ordinary care, could have and should have been avoided." Town of Hillsville v. Nester, 215 Va. 4, 5, 205 S.E.2d 398, 399 (1974) (citations omitted).  However, the Supreme Court of Virginia has "specifically declined to hold that, as a matter of law, a pedestrian's failure to look down while stepping forward must

7

constitute contributory negligence in every case." City of Suffolk
v. Hewitt, 226 Va. 20, 28, 307 S.E.2d 444, 448 (1983). Courts and
juries examine the size, location, and visibility of defects or
conditions in order to determine whether they are open and obvious.
If a hazard or condition is shown to be open and obvious, then the
burden shifts to the plaintiff to prove that she "exercised
reasonable care for his or her safety under the circumstances."

i.   Question of Open and Obvious

There is a genuine issue of material fact respecting whether
the pothole here at issue was open and obvious. BFRC correctly
notes that the Supreme Court of Virginia has found hazards similar
to the pothole in question to be open and obvious. (Def.'s Mem. In
Supp. Of Summ. J. 8-9 (citing Rocky Mount Shopping Center Assoc. v.
Steagall, 235 Va. 636, 638, 369 S.E.2d 193, 194 (1988) (finding
water meter recess measuring "eight to twelve inches across and two
to three inches deep" open and obvious); West v. City of
Portsmouth, 217 Va. 734, 739, 232 S.E.2d 763, 767 (1977) (finding
a water meter box measuring three feet by two and one half feet and
approximately two inches deep open and obvious).)

However, BFRC incorrectly suggests that all similar hazards
are de facto open and obvious and thus show contributory negligence
as a matter of law. (Def.'s Mem. In Supp. Of Summ. J. 8-9.
("Following the holdings of the courts in West [and]
Steagall...reasonable minds cannot disagree that the volcano-like

8

pothole was open and obvious.")) The Supreme Court of Virginia found contributory negligence in those cases because the plaintiff in <u>Stegall</u> admitted that she would have seen the hazard had she been looking, 235 Va. at 638, 369 S.E.2d at 194, and the plaintiff in <u>West</u> "was thoroughly familiar" with the sidewalk containing the hazard. 217 Va. at 738, 232 S.E.2d at 766; <u>see also</u> <u>Scott v. City of Lynchburg</u>, 241 Va. 64, 66-67, 399 S.E.2d 809. 810-11 (1991) (holding that where plaintiff has knowledge of the hazard, there is contributory negligence as a matter of law).

Distinguishing <u>Steagall</u>, <u>West</u>, and <u>Scott</u>, the Supreme Court of Virginia in <u>Ravenwood Towers, Inc. v. Woodyard</u> provides better guidance to determining whether a genuine issue of material fact exists concerning the pothole in the present action. In <u>Woodyard</u>, the Court affirmed a jury verdict for a plaintiff who fell into an elevator that was positioned a foot below the floor. 244 Va. at 53-54, 419 S.E.2d at 628. Distinguishing the decisions cited by BFRC, the <u>Woodyard</u> Court focused on the fact that "the floor coverings on the hall and elevator were dark, the walls of the elevator were brown, and the area where the elevators were located were [sic] dimly lighted." <u>Id.</u> at 59, 419 S.E.2d at 631. Accordingly, the Supreme Court of Virginia decided that the hazard was obscured and neither open nor obvious, thereby necessitating the conclusion that such an obscured hazard presented a question for the jury. <u>Id.</u>, 419 S.E.2d at 632.

9

Similar to the elevator in <u>Woodyard</u>, the pothole in question was allegedly covered by the shadows of parked cars on either side of the pothole. (Cring Dep. 42:5-24.) The pothole was also the same color as the blacktop surrounding it. (Plf.'s Resp. To Def.'s Mem. In Supp. Of Summ. J. 2, Exs. 4-6.) Furthermore, BFRC's employees failed to notice the allegedly open and obvious pothole during routine inspections that occur at least every morning. During his deposition, BFRC store manager Steve Davis discussed protocol regarding inspection of the parking lot:

Q. How often would someone go out and maybe check the parking lot? Was this a daily event?

A. I personally checked it every morning when I go [sic] in. Main thing I am looking for is broken glass. I do that when I pull in my vehicle. I go around the vehicles and see if I need to call 911. Usually I walk the parking lot a lot. The days that I work late, one or two a week, three a week sometimes, I'll walk the parking lot in the evenings, make sure all of the cars are locked, checking for trash, debris. All day long, if you are going in and out of the shop all day long, if you see anything, of course, you take care of it at that time.

(Davis Dep. 16:1-13.) On, and up to the day of Cring's injury, BFRC did not have any knowledge of the pothole. (Interrog. Resp. 14.)

10

As Cring points out, it is indeed ironic that BFRC would assert that the pothole is open and obvious as a matter of law when BFRC's employees, who actively inspect for hazards in the area, did not discover the pothole. (Resp. To Def.'s Mot. For Summ. J. 4.) Given this fact alone, reasonable minds could differ on whether the pothole was an open and obvious hazard. Accordingly, this issue is not ripe for resolution by summary judgment.

ii.  Evidence of Reasonable Care Under the Circumstances

Because this Court is convinced that a genuine issue of material fact exists regarding the open and obvious nature of the pothole, there is no need to evaluate whether Cring exercised reasonable care under the circumstances in which she was injured.

CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment will be denied.

It is so ORDERED.

_____/s/_____REP_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 28, 2008

11

As Cring points out, it is indeed ironic that BFRC would assert that the pothole is open and obvious as a matter of law when BFRC's employees, who actively inspect for hazards in the area, did not discover the pothole. (Resp. To Def.'s Mot. For Summ. J. 4.) Given this fact alone, reasonable minds could differ on whether the pothole was an open and obvious hazard. Accordingly, this issue is not ripe for resolution by summary judgment.

### ii.   Evidence of Reasonable Care Under the Circumstances

Because this Court is convinced that a genuine issue of material fact exists regarding the open and obvious nature of the pothole, there is no need to evaluate whether Cring exercised reasonable care under the circumstances in which she was injured.

### CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment will be denied.

It is so ORDERED.

_____/s/_____   _REP_
                      Robert E. Payne
                      Senior United States District Judge

Richmond, Virginia
Date: October 28, 2008

11